## PETERS *v.* PRINCE.

### Opinion delivered October 22, 1917.

RESCISSION OF CONTRACTS—FRAUD AND FALSE REPRESENTATIONS.—Appellant was indebted to appellee on an open account and gave his note therefor. Later appellant represented himself to appellee, as insolvent, and induced appellee to exchange his (appellant's) note for other notes, which appellant indorsed without recourse. It appeared that these latter notes were worthless; the testimony was conflicting as to whether appellant was insolvent at the time of the exchange, but, *held*, the judgment of the chancellor, setting aside the exchange of notes, and rendering judgment against appellant, would not be disturbed on appeal.

Appeal from Crawford Chancery Court; *Wm. A Falconer*, Chancellor; affirmed.

*Edwin Hiner,* for appellant.

1. The findings of the court are not supported by the evidence. Appellant acted at all times in good faith. He attempted to tell the true condition of affairs. His statements to be fraudulent must have been made with the knowledge that same were fraudulent. 31 Ark. 170.

*Geo. G. Stockard,* for appellee.

1. Appellant's statements were false and the court so found. The findings are sustained by the evidence. 87 Ark. 593; 99 *Id.* 428; 83 *Id.* 524; 98 *Id.* 328; 97 *Id.* 438.

2. Peters' testimony as to his insolvency was false. 4 Words & Phr. 3647. The facts were peculiarly within appellant's knowledge.

HART, J. F. E. Prince instituted this action in the chancery court against G. W. Peters for the purpose of annulling and setting aside a certain contract made by him with the defendant which he alleged was procured by the false and fraudulent representations of the defendant.

During the years 1914 and 1915, F. E. Prince was a manufacturer of crates and baskets at Pittsburg, Texas, and G. W. Peters was a merchant at Mountainburg, Arkansas. On September 15, 1914, Peters was indebted to Prince for merchandise on open account in the sum of $733.45 and executed his note therefor payable on the 15th day of March, 1915.

On March 5, 1915, Prince wrote Peters reminding him that his note would be due on the 15th inst., and asking him if he would be able to pay it. On March 8, 1915, Peters answered this letter, and wrote Prince that he would be unable to pay the note when it became due. The letter gives in detail his reasons for being unable to pay the note, but on account of its length it would unduly extend this statement of facts to set it out in full. In substance Peters wrote Prince that there was no chance on earth for him to pay his note; that his stock of goods was about out and that all of his property, except some notes and accounts for some merchandise, was tied up for all that it was worth; that he owed other debts for merchan-

dise that were not secured but that he wanted to give Prince the first chance. He proposed that he would turn over to Prince $800 in amount of notes taken from his customers, all dated January 1, 1915, and due November 1, 1915. He stated that the makers of these notes were all living in the county and that the notes were good live paper; that he further stated that these were the best notes that he had and that he wanted to give Prince first choice of his customers' notes on hand. Prince replied that he thought Peters was taking too gloomy a view of the situation, that he would soon get on his feet again. He reminded him that the past year had been a hard one on all kinds of business. He suggested that the notes be sent to a bank at Pittsburg, Texas, and that the bank would endeavor to collect the notes and remit the balance, after paying Prince's debt to Peters. On March 12, 1915, Peters answered this letter. He reaffirmed what he had stated in his first letter, and declined to send the notes on the terms stated in Prince's letter of the 8th inst. He reminded Prince that others were offering to take the notes but that he wanted to pay Prince first. He offered to endorse the notes in question without recourse and exchange them for his own note. Prince then accepted this offer and notes to the amount of $800.83 principal, with the accrued interest, were endorsed by Peters to Prince without recourse and forwarded to the latter. Prince in return sent Peters' note to him. Prince was not personally acquainted with either Peters or the makers of the notes which Peters endorsed to him. When the notes became due Prince sent them to Mountainburg for collection and ascertained that all the makers were insolvent and that nothing could be collected on the notes.

L. L. Stokes testified that he was cashier of the bank at Mountainburg in March and April, 1915, and that it was a part of his duties to inform himself as to the financial standing of the people in and around Mountainburg; that he had known G. W. Peters about twenty years; that he personally considered Peters solvent during the whole of the year 1915, and since that time; that he owned prop-

erty at Mountainburg worth five or six thousand dollars and that he had several farms near Mountainburg and Lancaster in 1915. He was asked about the solvency of the makers of the notes which Peters had transferred to Prince and testified that each of them was insolvent on the 1st day of January, 1915, and had remained so ever since.

E. Morris, who succeeded Stokes as cashier of the bank at Mountainburg, testified that he knew personally the makers of these notes, and that each of them was insolvent prior to 1915, and had remained insolvent during 1915, and ever since that time; that Peters was solvent during the whole of 1915, and had continued to be solvent ever since.

Prince testified that he was unacquainted with Peters and with the parties whose notes he received from Peters; that he had never been to Mountainburg and relied wholly upon the representations made by Peters in exchanging Peters' note for the notes of his customers; that he believed from the statements contained in Peters' letters that he was absolutely insolvent and that he must act quickly if he wished to make the exchange; that he was not acquainted with any one in Mountainburg to whom he might have made inquiries as to the truth of the representations made by Peters and felt from his prior dealings with Peters he could rely upon the statements made by him.

On the other hand, it was shown by two witnesses that Peters was generally regarded to be in an insolvent condition in 1915. Peters himself testified that he regarded himself to be in an insolvent condition and thought the notes he had transferred to Prince were as collectable as his own paper could be. He denied that he had misrepresented his condition in any way to Prince.

The chancellor found that Prince was induced by the fraudulent misrepresentations of Peters to exchange the latter's note for $773.45, for the notes of customers to the amount of $800.83, and the accrued interest; that Peters was solvent at the time of the exchange of the notes and

the makers of the notes exchanged by him for his own notes were insolvent. Judgment was rendered in favor of Prince against Peters for the amount of $773.45 and the accrued interest. Peters has appealed.

It is now strongly insisted that the findings of facts made by the chancellor are against the preponderance of the evidence, but we do not agree with counsel in this contention. It will be remembered that Prince had never been to Mountainburg and was not personally acquainted with any one there. The solvency of Peters and the insolvency of his customers from whom he had secured notes for the amounts which they owed him were facts peculiarly within his own knowledge and under the circumstances of this case Prince had a right to rely upon his statements in this regard. He knew whether he was solvent or not and should be bound by the representations he made to Prince in that regard. He also knew about the financial condition of his customers and is bound by the statements he made concerning their solvency. Prince lived several hundred miles away and was unacquainted with any of the parties and had been selling Peters merchandise for the past two years. Their business dealings had been satisfactory and Prince had a right to rely upon his statements in the matter. It appears from the testimony of the two men that had been cashiers of the Bank of Mountainburg that Peters was solvent at the time he made the representations to Prince and had so continued ever since. It is clearly apparent from their testimony that the customers' notes could not be realized upon and that Peters knew this fact when he traded the notes to Prince. It is true the above testimony was contradicted by Peters and to a slight extent by two witnesses for him, but a careful consideration of the whole testimony leads us to the conclusion that the chancellor did not err in finding in favor of the plaintiff. It can not be said that his finding is against the preponderance of the evidence.

Therefore, the decree will be affirmed.